NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

14-P-1262                                      Appeals Court

EUGENE M. IVEY & another[1] vs.  COMMISSIONER OF CORRECTION &
others.[2]

No. 14-P-1262.

Suffolk.     May 4, 2015. - August 13, 2015.

Present:  Grainger, Hanlon, & Carhart, JJ.


Imprisonment, Department disciplinary unit, Enforcement of
     discipline.  Administrative Law, Regulations.  Due Process
     of Law, Prison disciplinary proceedings.  Practice, Civil,
     Declaratory proceeding.


     Civil action commenced in the Superior Court Department on
January 9, 2012.

     The case was heard by Bonnie H. MacLeod, J., on motions for
summary judgment.


     Bonita Tenneriello for the plaintiffs.
     C. Raye Poole for the defendants.


     CARHART, J.  Plaintiffs Eugene M. Ivey and Francis Lang

appeal from a summary judgment in favor of the defendants on the

---

[1] Francis Lang.

[2] The deputy commissioner of the Department of Correction
and the superintendent of the Massachusetts Correctional
Institution at Cedar Junction.

plaintiffs' complaint for declaratory and injunctive relief. The defendants are officials of the Department of Correction (hereinafter, collectively, the DOC). The plaintiffs, who are prisoners at the Massachusetts Correctional Institution at Cedar Junction (MCI-Cedar Junction), sought a declaration that an informal DOC policy regarding segregation in the departmental disciplinary unit (DDU) violates the DOC inmate discipline regulations (103 Code Mass. Regs. §§ 430.00, hereinafter, regulations), and an order enjoining the DOC from enforcing the policy. Because we conclude that the informal policy was canceled as a matter of law by amendments to the regulations, we vacate the judgment.

Background. The summary judgment record reflects the following undisputed facts. The DDU is located on the grounds of MCI-Cedar Junction. All inmates entering the DDU are provided a "DDU Inmate Orientation Manual" (DDU manual), which is updated annually.[3] Once inmates arrive in the DDU, they become subject to a policy (the policy) in the DDU manual:

> "The DDU Administrator/designee shall initially review the status of each inmate placed in the DDU within 30 days of placement. Thereafter, each inmate's status shall be reviewed every 30 days. An inmate will lose credit for time served in DDU and loss of all pending and previously earned privileges (i.e., TV, radio, visits, and telephone) if he is found guilty of:

---

[3] Every DDU inmate is given a new DDU manual when it is updated.

- one Category 1 disciplinary report
- one Category 2 disciplinary report
- one Category 3 AND one Category 4 disciplinary report
- two Category 3 disciplinary reports or
- two Category 4 disciplinary reports

"The loss of credit will occur for the review period in which the report was written."

The policy previously had been codified at 103 Code Mass. Regs. § 430.25(3)(d) (1993) ("An inmate shall be credited for time served [in the DDU] on a monthly basis except when an inmate fails to attend his monthly review or is found guilty of a disciplinary offense"), and appeared in the 2002 version of the DDU manual. However, in 2006, the DOC amended its regulations in accordance with the Administrative Procedures Act, G. L. c. 30A, §§ 2-6, and removed the language of the policy. The policy nevertheless appeared in the 2008, 2009, 2010, 2011, and 2012 versions of the DDU manual. The practical effect of the policy is that "no sanction is recommended when a DDU inmate is found guilty of a disciplinary report/s as set forth in the DDU Manual; rather, the sanction in the DDU Manual is applied."

Both plaintiffs were sentenced to fixed terms in the DDU. Following separate hearings before a special hearing officer, Ivey received DDU sentences of ten years, one year, and six months. While serving the ten-year sentence, Ivey had sixteen

review periods in which he incurred guilty findings on disciplinary reports.[4]  For each disciplinary report, Ivey was given notice of the charges, a hearing, and the chance to appeal the guilty finding.  Pursuant to the policy, he was denied one month's credit toward his DDU sentence for each review period in which he was found guilty of a disciplinary violation.  Ivey's release date from the DDU thus was extended by sixteen months.  Ivey filed a grievance regarding the denial of credit, arguing that he was entitled under the regulations to a special hearing before losing credit toward his DDU sentence.  Ivey's grievance was denied by the superintendent of MCI-Cedar Junction, whose written decision stated that "[i]t is a condition of receiving credit toward an existing DDU sentence that an inmate refrains from disciplinary violations."

Lang received a six-year DDU sentence after a hearing before a special hearing officer.  While serving this sentence, Lang had fourteen review periods in which he was found or pleaded guilty to category two, three, and four disciplinary reports.  Lang had notice of, and an opportunity to participate in, the hearings on each of these disciplinary reports, and he was able to appeal the findings of guilt.  Lang was sanctioned with restitution for two of his disciplinary violations; he received no sanction for the others.  Instead, Lang was denied

---

[4] Two of these resulted in the additional DDU sentences.

fourteen months of credit toward his DDU sentence, pursuant to the policy. Lang did not file a grievance or appeal the denial of credit.

In 2012, the plaintiffs filed in Superior Court a complaint for declaratory and injunctive relief, alleging that the policy violates the regulations and the plaintiffs' due process rights, and is invalid because it constitutes a regulation adopted without notice and comment as required by the Administrative Procedures Act, G. L. c. 30A, §§ 2-6. Both parties moved for summary judgment. Relying on footnote three of an unpublished decision issued pursuant to our rule 1:28, Gaskins v. Marshall, 84 Mass. App. Ct. 1134 (2014), a judge allowed the DOC's motion for summary judgment.[5] The plaintiffs appeal "only the dismissal of their claim that the Policy violates the Inmate Discipline regulations."

Discussion. 1. Statutory framework. "The department has promulgated detailed regulations governing disciplinary actions in State correctional institutions." Kenney v. Commissioner of

---

[5] In footnote three of Gaskins, the panel noted that 103 Code Mass. Regs. § 430.25(3)(d) (1993) was amended in 2006, "leaving the treatment of DDU time to the discretion of prison officials." The issue in Gaskins was whether extension of a DDU sentence pursuant to 103 Code Mass. Regs. § 430.25(3)(d) (2006) violated the inmate's due process rights. Citing Sandin v. Conner, 515 U.S. 472, 482 (1995), we declined to consider the changes to § 430.25(3)(d) "[b]ecause the prison policy was in the discretion of the prison officials, and . . . the requirements of due process were also satisfied."

Correction, 393 Mass. 28, 31 (1984). These regulations identify four categories of disciplinary offenses for which inmates may be sanctioned; category one and category two offenses are considered the most serious, while category three and category four offenses are considered minor. 103 Code Mass. Regs. § 430.24 (2006).[6] "Sanctions for each Category 1 offense" include "[r]eferral to [the DDU] for a period not to exceed ten years for all violations arising out of one incident or substantially related incidents," while sanctions for each category two offense include referral to the DDU for a period not to exceed five years. 103 Code Mass. Regs. § 430.25(1)(f) and (2)(f) (2006). Inmates convicted of a category three or category four offense may not be sentenced to DDU. 103 Code Mass. Regs. § 430.25(3) and (4) (2006).

The regulations contain a specific procedure for initial referrals to DDU, see 103 Code Mass. Regs. § 430.08 (2006), and provide that, except for initial referrals to DDU, "disciplinary matters which may result in the inmate receiving a sentence to a [DDU] shall comply with the provisions of 103 CMR 430.00." Ibid. Under those provisions, an inmate who has incurred a disciplinary report is entitled to a copy of the report, a notice of hearing, and automatic discovery regarding the alleged

---

[6] Section 430.24 of 103 Code Mass. Regs. was amended, effective November 14, 2014, but in a manner not relevant here.

violation(s).  103 Code Mass. Regs. § 430.11(1) (2006).  A hearing must be scheduled "within a reasonable time" after the inmate has received notice of the charges.  <u>Ibid</u>.  A hearing officer conducts the hearing, and "shall make findings of fact, determine guilt or innocence, and make sanction recommendations."  103 Code Mass. Regs. § 430.13(1) and (6) (2006).  The hearing officer "may recommend one or more of the sanctions listed in 103 CMR 430.25," 103 Code Mass. Regs. § 430.16(2) (2006), but "[n]o more than one sanction shall be imposed per offense and no more than five sanctions (in addition to restitution) may be imposed for all offenses arising out of [any one] or substantially related incidents in which the highest offense(s) alleged is from Category 1."  103 Code Mass. Regs. § 430.25(1) (2006).[7]  "All inmates may appeal the finding or sanction(s) of the Hearing Officer to the Superintendent" within fifteen days of receipt of a written decision, and the deputy superintendent must review the disposition "within ten

_____

[7] "[N]o more than four sanctions (in addition to restitution) may be imposed for all offenses arising out of [any one] or substantially related incidents in which the highest offense(s) alleged is from Category 2"; "no more than three sanctions (in addition to restitution) may be imposed for all offenses arising out of [any one] or substantially related incidents in which the highest offense(s) alleged is from Category 3"; and "no more than two sanctions (in addition to restitution) may be imposed for all offenses arising out of [any one] or substantially related incidents in which the highest offense(s) alleged is from Category 4."  103 Code Mass. Regs. § 430.25(2)-(4) (2006).

business days of the conclusion of the appeal process, to ensure that all procedural guidelines established in accordance with 103 CMR 430.00, have been complied with."  103 Code Mass. Regs. §§ 430.18(1), 430.19 (2006).

2.  Standards of review.  Because they allege that the policy violates DOC regulations, the plaintiffs properly brought this action under the declaratory judgment act.  See G. L. c. 231A, § 2; Mass.R.Civ.P. 57, 365 Mass. 826 (1974); Nelson v. Commissioner of Correction, 390 Mass. 379, 387-388 (1983); Royce v. Commissioner of Correction, 390 Mass. 425, 426 (1983).  To be entitled to summary judgment on their challenge to the DOC's policy, the plaintiffs bore the burden of demonstrating the absence of a triable issue regarding whether "the [policy] is 'illegal, arbitrary, or capricious.'"  Ciampi v. Commissioner of Correction, 452 Mass. 162, 166 (2008), quoting from Borden, Inc. v. Commissioner of Pub. Health, 388 Mass. 707, 722, cert. denied, 464 U.S. 936 (1983).  The plaintiffs rely on the 1995 regulations, the amended 2006 regulations, their statement of undisputed facts with the DOC's response thereto, and their affidavits to support their argument that enforcement of the policy is (1) arbitrary and capricious in light of its removal from the regulations; (2) illegal with respect to Ivey because it has caused him to be held beyond the ten-year maximum allowable time under the regulations for a single offense, and

has resulted in new DDU sentences in the form of denial of credit without a DDU hearing; and (3) illegal with respect to Lang because it has resulted in Lang receiving new DDU sentences in the form of denial of credit for offenses that are not sanctionable by the DDU, and without the special DDU hearing required by the regulations.

As the party who would not bear the burden of proof at trial, the DOC was required to "demonstrate[], by reference to material described in Mass.R.Civ.P. 56(c), unmet by countervailing materials, that the [plaintiffs had] no reasonable expectation of proving an essential element of [their] case." Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). The DOC relied on the pleadings, its responses to the plaintiffs' statement of undisputed facts, the DDU manual, and an affidavit from a correctional officer assigned to the DDU to show that prison administrators are not precluded by the regulations from enforcing the policy.

The judge allowed the DOC's motion for summary judgment, and we review her decision de novo. Miller v. Cotter, 448 Mass. 671, 676 (2007). We look to the summary judgment record to determine "whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to a judgment as a

matter of law." Augat, Inc. v. Liberty Mut. Ins. Co., 410 Mass. 117, 120 (1991).

3. Analysis. The dispositive issue is whether the regulations promulgated in 2006 canceled the policy as a matter of law. "The interpretation of a regulation is a question of law which we review de novo," Commonwealth v. Hourican, 85 Mass. App. Ct. 408, 410 (2014), applying "the traditional rules of statutory construction," Young v. Patukonis, 24 Mass. App. Ct. 907, 908 (1987). "This is so because a properly promulgated regulation has the force of law . . . and must be accorded all the deference due to a statute." Borden, Inc., 388 Mass. at 723.

As with statutes, regulations "must be interpreted as promulgated." Morin v. Commissioner of Pub. Welfare, 16 Mass. App. Ct. 20, 24 (1983). "Words are to be accorded their ordinary meaning and approved usage," Boston Hous. Authy. v. National Conference of Firemen & Oilers, Local 3, 458 Mass. 155, 162 (2010), when "the language used constitutes the principal source of insight into regulatory purpose." Morin, supra. While "[o]rdinarily the interpretation of an administrative body gives to its own regulation is entitled to deference and may be controlling," ibid., the "duty of statutory interpretation rests ultimately with the courts," Town Fair Tire Centers, Inc. v. Commissioner of Rev., 454 Mass. 601, 605 (2009).

The regulations establish a system "governing disciplinary proceedings involving inmates of state correctional institutions."  103 Code Mass. Regs. § 430.01 (2006).  The regulations apply "to inmates housed at all correctional institutions within the [DOC]," including those housed in the DDU.  103 Code Mass. Regs. § 430.04 (2006).  Initial referrals to the DDU are governed by the procedures set forth at 103 Code Mass. Regs. § 430.08(1)-(6) (2006), and except for violations that would result in an initial referral to the DDU, "disciplinary matters which may result in the inmate receiving a sentence to a [DDU] shall comply with the provisions of 103 CMR 430.00."[8]  103 Code Mass. Regs. § 430.08 (2006).  Thus, under the plain language of the regulations, all disciplinary matters not involving initial referral to the DDU, including those involving DDU inmates, must comply with the regulations.

Under the regulations, sanctions for each category of offense "are as follows" (emphasis supplied).  103 Code Mass. Regs. § 430.25 (2006).  Denial of credit is not listed as a

---

[8] The parties dispute whether denial of credit pursuant to the policy constitutes a new DDU sentence.  The plaintiffs argue that it does, because "[a]n additional month in the DDU . . . feels exactly the same to the prisoner, whether it is called a 'sanction,' an 'extension' or the 'denial of credit.'"  The DOC argues that it does not, because "[i]t is a condition of receiving credit toward an existing DDU sentence that an inmate refrains from disciplinary violations."  Resolution of this disputed fact is not required, as it is not material to the question whether the policy was canceled when the DOC amended its regulations.

sanction, yet it is undisputed that none of the sanctions set forth in the regulations "is recommended when a DDU inmate is found guilty of a disciplinary report/s as set forth in the DDU Manual; rather, the sanction in the DDU Manual [of mandatory denial of credit] is applied."  Thus, DDU inmates like Lang who have been convicted of category three and four offenses are not sanctioned pursuant to 103 Code Mass. Regs. § 430.25(3) and (4) (2006), as required by the regulations, but are denied credit toward their DDU sentence pursuant to the policy and must stay in the DDU for one extra month, notwithstanding the fact that DDU is not a permissible sanction for category three and four offenses.

Inmates like Ivey who have received the maximum DDU sanction allowable under the regulations for a single category one offense are not sanctioned under the regulations for committing subsequent disciplinary violations; instead they are denied credit toward their maximum sentence.  This effects a sanction longer than that permitted under the regulations because "[p]enalties for violation of the terms of [confinement in the DDU], including the penalty of additional [time in the DDU for subsequent violations], are attributed to the original [DDU sentence] rather than to the violation."  Commonwealth v. Cory, 454 Mass. 559, 564 (2009).  Because these undisputed facts demonstrate that the policy conflicts with the plain language of

the regulations, the policy was canceled as a matter of law by the regulations.  103 Code Mass. Regs. § 430.03 (2006) (regulations effective January 30, 2006, "cancel[] all previous departmental or institutional policy statement [and] rules or regulations . . . regarding the conduct of disciplinary proceedings, to the extent they are inconsistent with 103 CMR 430.00").

The DOC argues that it is not precluded by the regulations from enforcing the policy because the "provision regarding losing credit/not being credited was in the DDU Manual and/or the DDU Handbook for many years prior to promulgation of the 2006 version of the regulation."  The DOC further points to the policy's inclusion in the 2008 through 2012 versions of the DDU manual as evidence that enforcement of the policy is not precluded.  The motion judge agreed that the DOC could continue to enforce the policy because it "merely fills in certain details concerning the handling of disciplinary matters that occur in the DDU."  See Massachusetts Gen. Hosp. v. Rate Setting Commn., 371 Mass. 705, 707 (1977) (agencies may issue advisory or informational guidelines intended "to fill in the details or clear up an ambiguity of an established policy").

We recognize that "courts permit prison administrators considerable discretion in the adoption and implementation of prison policies."  Royce, 390 Mass. at 427.  "However, the

limits of such discretion are established by the rules and regulations promulgated by the Department of Correction." Ibid. DOC regulations carry the force of law and are binding, Dougan v. Commissioner of Correction, 34 Mass. App. Ct. 147, 148 (1993), "and the defendants are required to comply with their terms," Stokes v. Commissioner of Correction, 26 Mass. App. Ct. 585, 588 (1988). Agency guidelines are not entitled to deference if they misapply the law, Metropolitan Prop. & Cas. Ins. Co. v. Blue Cross & Blue Shield of Mass., Inc., 451 Mass. 389, 397 (2008), and the law in this case creates a detailed system for handling disciplinary violations by inmates, including DDU inmates, that does not include denying them credit toward their DDU sentences. "Once an agency has seen fit to promulgate regulations, it must comply with those regulations." Royce, supra. The DOC "exercised its discretion and changed its policy" to remove denial of credit as a permissible sanction for disciplinary violations by DDU inmates, John Donnelly & Sons, Inc. v. Outdoor Advertising Bd., 369 Mass. 206, 213 (1975), and it then was "bound by the mandate of its own regulations," Good v. Commissioner of Correction, 417 Mass. 329, 332 (1994). The DOC must comply with its regulations "not only to make the process of imposing discipline on prison inmates more fair, but to assure the inmates and the public of the integrity of the process." Stokes, supra at 591. Only "[w]ith these procedural

safeguards in place [does] DDU's disciplinary process comport[] with the requirements of the Fourteenth Amendment." Torres v. Commissioner of Correction, 427 Mass. 611, 618, cert. denied, 525 U.S. 1017 (1998). The DOC's prior approval of the policy "is of no consequence" in light of the amendments to the regulations, John Donnelly & Sons, Inc., supra; the regulations promulgated in 2006, "as the last expression of the [DOC], control[]." Doe v. Attorney Gen. (No. 1), 425 Mass. 210, 215 (1997). "[I]ndividuals within the agency may not arbitrarily disregard agency regulations to the prejudice of a party's rights," Kenney, 393 Mass. at 33, and the DOC's continued enforcement of the policy notwithstanding its removal from the regulations "lead[s] to results which are both arbitrary and inequitable." Kszepka's Case, 408 Mass. 843, 847 (1996). Accordingly, the policy cannot stand.[9]

Conclusion. The declaratory judgment in favor of the DOC is vacated. A new judgment shall enter stating that the policy conflicts with the regulations and was canceled as a matter of law in 2006. Furthermore, the judgment shall enjoin the DOC from violating the regulations by denying a DDU inmate credit toward his DDU sentence upon conviction of disciplinary

---

[9] Gaskins does not require a different result, as the issue presented in that case was not whether the policy is arbitrary or illegal in light of the 2006 amendments to the regulations, but whether 103 Code Mass. Regs. § 430.25(3)(d) (1995), effected a deprivation of liberty without due process of law.

violations.  The case is remanded for further proceedings consistent with this opinion.

<u>So ordered</u>.