NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

14-P-1648                                           Appeals Court


    EDMUND D. LaCHANCE, JR.  vs.  COMMISSIONER OF CORRECTION &
                            others.[1]


                         No. 14-P-1648.

        Suffolk.     May 13, 2015. - October 13, 2015.

            Present:  Trainor, Agnes, & Blake, JJ.



Imprisonment, Department disciplinary unit, Enforcement of
      discipline, Grievances.  Administrative Law, Prison
      disciplinary proceeding, Agency's authority, Regulations,
      Rulemaking.  Practice, Civil, Review of administrative
      action, Summary judgment.




      Civil action commenced in the Superior Court Department on
July 29, 2011.

      The case was heard by Merita A. Hopkins, J., on motions for
summary judgment, and motions for reconsideration were
considered by her.


      David J. Rentsch for the defendants.
      Edmund D. LaChance, Jr., pro se.


      TRAINOR, J.  On cross-motions for summary judgment, the

judge allowed the plaintiff's motion for summary judgment on

      _____

      [1] Various officials of the Department of Correction.

count IV of the complaint and the defendants' motion for summary judgment on the remaining counts. In granting summary judgment on count IV, the judge "declare[d] that [North Central Correctional Institution's (NCCI)] policy of terminating inmates from the Garden Program as a result of guilty findings violates the prohibition against imposing more than one sanction per offense contained in 103 Code Mass. Regs. § 430.25 [2006]."[2] The defendants appeal from the allowance of summary judgment on count IV. We review the allowance of a motion for summary judgment de novo. Alicea v. Commonwealth, 466 Mass. 228, 234 (2013).

The material facts are not in dispute. The plaintiff, an inmate in NCCI during all relevant times, was a participant in NCCI's garden program, which is a leisure program, in the spring of 2011. The plaintiff was charged with and pleaded guilty to at least three different disciplinary offenses that occurred on different days between April 6 and May 13, 2011. The plaintiff

---

[2] The judge also declared "that the defendants have not otherwise violated the plaintiff's rights or the Department of Corrections Regulations." The judge further concluded that whether the plaintiff could participate in the garden program was moot because the "growing season ha[d] long passed." The judge nevertheless reached the merits because the issue whether a prisoner can be terminated from the garden program after a guilty finding falls within an exception to the mootness doctrine as it is "capable of repetition, yet evading review." Karchmar v. Worcester, 364 Mass. 124, 136 (1973), quoting from Southern Pac. Terminal Co. v. Interstate Commerce Commn., 219 U.S. 498, 515 (1911).

received a sanction for each separate disciplinary offense, all of which were category three offenses. See 103 Code Mass. Regs. § 430.24 (2006). For the offense that occurred on April 6, the plaintiff was sanctioned in the disciplinary proceeding with disciplinary detention. For the offense that occurred on April 14, the plaintiff was sanctioned in the disciplinary proceeding with "loss of leisure program" for thirty days. For the offense that occurred on May 13, the plaintiff was sanctioned in the disciplinary proceeding with a disciplinary detention.

After the plaintiff returned from the disciplinary detention for the incident on April 6, he was terminated from his employment in the weight room. Similarly, after the plaintiff returned from his disciplinary detention for the incident on May 13, he was terminated from the garden program.

In granting summary judgment on count IV, the judge reasoned that the plaintiff's termination from the garden program was an impermissible double sanction under 103 Code Mass. Regs. § 430.25(3) because being suspended from a leisure program is a possible disciplinary sanction for a category three offense.[3] We disagree.

Prison officials have the duty and obligation to maintain security in the prison. See G. L. c. 124, § 1(b), as amended by

---

[3] The judge further reasoned that termination from employment is not an impermissible double sanction and is apparently within the discretion of prison officials.

St. 1996, c. 151, § 283 (Commissioner of Correction shall "maintain security, safety and order at all state correctional facilities").  It has also been recognized that "[t]he department [of correction] need not wait until specific breaches of safety and security arise to take reasonable measures . . . based on the exercise of professional judgment, to guard against the undermining of its unusually important goals."  Rasheed v. Commissioner of Correction, 446 Mass. 463, 474 (2006).  See Nelson v. Commissioner of Correction, 390 Mass. 379, 392 (1983), quoting from Bell v. Wolfish, 441 U.S. 520, 547 (1979) ("In determining if these regulations are adequate to safeguard the Federal due process rights of prisoners, we recognize that the [United States] Supreme Court has held that prison officials 'should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security'"); Kenney v. Commissioner of Correction, 393 Mass. 28, 35 (1984), quoting from Wolff v. McDonnell, 418 U.S. 539, 566 (1974) (although discretion is not unlimited, "'[t]he operation of a correctional institution is at best an extraordinarily difficult undertaking' and, therefore, we have recognized that prison administrators have broad discretion in the administration of prison affairs"); DuPont v. Commissioner of Correction, 448 Mass. 389, 398 (2007), quoting from Turner v.

Safley, 482 U.S. 78, 86 (1987) ("The commissioner's determination that the use of a [department of disciplinary unit] is necessary to the safe, secure, and orderly operation of some prisons, but not others, is the type of determination 'peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to [security] considerations, courts should ordinarily defer to their expert judgment in such matters'"); Matthews v. Rakiey, 38 Mass. App. Ct. 490, 496 (1995) ("[A] prison's internal security is peculiarly a matter normally left to the discretion of prison administrators. In assessing the seriousness of a threat to institutional security, prison administrators necessarily draw on more than the specific facts surrounding a particular incident. . . . The judgment of prison officials in this context, like that of those making parole decisions, turns largely on purely subjective evaluations and on predictions of future behavior" [quotations and citations omitted]).[4]

---

[4] The dissent is premised on the idea, without either citation to statute or case law, that prison officials are granted no discretion beyond their promulgated rules, regulations, and policies. The dissent's premise, however, is not based on and is substantially different from our settled authority that once promulgated, prison officials have no discretion to violate their regulations. See Ivey v. Commissioner of Correction, 88 Mass. App. Ct. 18, 25 (2015)

The garden program gives inmates access to dangerous instrumentalities. Given the potential security risk, prison officials in their professional judgment created the garden program rules. The rules require that an inmate be terminated from the program after a guilty finding for any disciplinary report and give the prison administration discretion to terminate an inmate from the program at any time.[5,6] Prison

---

("However, the limits of such discretion are established by the rules and regulations promulgated by the Department of Correction. DOC regulations carry the force of law and are binding, and the defendants are required to comply with their terms" [quotations and citations omitted]).

[5] The Deputy Superintendent for Programs and Treatment (Deputy Superintendent) of NCCI stated in her affidavit that security concerns require that "inmates who present management and/or disciplinary problems may not participate in the garden program" because such inmates have access to tools and rocks.

[6] Rule 26 of the 2011 Inmate Garden Rules (rule 26) states: "Inmates will be terminated from the garden program upon a guilty finding for any disciplinary report and/or any violation of garden rules. Participation in the garden program is a privilege and the Administration may use its discretion to remove any inmate from the program at any time whether or not a disciplinary report is issued. Inmates terminated from the program forfeit their slot and may apply for readmission via the lottery system for the next season." Under this rule, the plaintiff should have been terminated from the program after his first disciplinary guilty finding. The failure of prison officials to terminate the plaintiff's participation in the program however created no prejudice against him. This failure does not deprive the administration of its ability to make a discretionary determination based on its promulgated policy and a security analysis of the situation surrounding a specific inmate. Whether the inmate has disciplinary infractions and guilty findings is irrelevant if it is a security risk to allow the inmate to continue in a program or in employment.

The dissent's assertion that the defendants did not rely on rule 26 as a basis for terminating the plaintiff from the garden program is not consistent with the statement of the Deputy Superintendent. The Deputy Superintendent stated in her affidavit that after being released from his "disciplinary detention sanction," the plaintiff "was verbally notified that he was terminated from the inmate garden program." Her affidavit further stated that "[t]he garden program at NCCI is operated in a large, fenced off area of the prison. Inmates who are selected for the program have access to a variety of gardening tools. Large rocks separate the garden plots. As such, due to institutional security concerns, inmates who present management and/or disciplinary problems may not participate in the garden program. In this case, [the plaintiff] received a disciplinary report in April, 2011 for being verbally abusive to staff and then another disciplinary report in May, 2011 for being out of place. Through his misconduct, he exhibited an inability or unwillingness to follow institutional rules, and it was necessary to terminate him from the garden program." (Emphasis added). She went on explain that similar to the garden program, "good behavior is a condition of employment. Inmates may hold jobs at the discretion of prison administration. . . . An inmate can be removed from a work assignment even without receiving a disciplinary report. . . . In my experience as a corrections professional, it is imperative that prison administrators have full authority to terminate an inmate from a work assignment. A prison job is a position of trust conferred by the prison administration." It is clear from the totality of her affidavit that prison administrators do not consider termination from employment or from the garden program as a punishment and certainly not as a disciplinary sanction. The Deputy Superintendent described both discretionary actions as authorized by promulgated rules and necessary to maintain institutional security. Contrary to the dissent's representation, the Deputy Superintendent specifically refers to both the 2011 Inmate Garden Rules and the Institution Work Assignments policy in her affidavit. The defendant's appeal from the judge's declaration that the NCCI "policy of terminating inmates from the Garden Program because of guilty findings violates the prohibition against imposing more than one sanction [per offense] contained in 103 Code Mass. Regs. § 430.25." The judge ruled that rule 26 is a violation of 103 Code Mass. Regs. § 430.25. In contrast, we hold that the garden program rules that allow prison officials to terminate an inmate from the garden program in their discretion or require them to

officials may use their professional judgment and decide to terminate a prisoner from the garden program to ensure the safety of the prison. The process created for terminating an inmate from the garden program is separate from a disciplinary proceeding in which, once the inmate's guilt is determined, <u>one</u> sanction may be imposed. See 103 Code Mass. Regs. § 430.25.

Sanctions for category three offenses are provided in 103 Code Mass. Regs. § 430.25(3), which states:

> "(3) Sanctions for each Category 3 offense are as follows: (a) Disciplinary Detention for up to ten days; (b) Up to 60 days loss of a privilege, including but not limited to one of the following: television, radio, canteen, either visits or phone privileges, hot pots, and leisure programs; (c) Cell or housing restriction for up to ten days; (d) Restitution, including, if applicable, any medical treatment assessment under M.G.L. c. 124, § 1(s); (e) Prohibition from replacing any altered appliance for up to four months; (f) Up to 15 hours of extra duty. No more than one sanction shall be imposed per offense and no more than three sanctions (in addition to restitution) may be imposed for all offenses arising out of any one or substantially related incidents in which the highest offense(s) alleged is from Category 3."[7]

terminate the inmate after a guilty finding and the imposition of a sanction pursuant to § 430.25, is not an impermissible double sanction. Termination from a leisure program, like termination from employment, is not a possible sanction under the regulation. The defendants have discretion to implement policies "needed to preserve internal order and discipline and to maintain institutional security." <u>Nelson</u> v. <u>Commissioner of Correction</u>, 390 Mass. at 392, quoting from <u>Bell</u> v. <u>Wolfish</u>, 441 U.S at 547. The action taken here was pursuant to a promulgated policy which did not violate any promulgated regulations.

[7] The regulations relevant here are not a model in drafting and should be updated for the benefit of clarity and certainty. The regulations related to disciplinary proceedings should clearly identify the right of prison officials to take actions

We recognize that "[o]nce an agency has seen fit to promulgate regulations, it must comply with those regulations," even if a matter is generally within the agency's discretion. Royce v. Commissioner of Correction, 390 Mass. 425, 427 (1983). See Haverty v. Commissioner of Correction, 437 Mass. 737, 762 (2002), S.C., 400 Mass 1 (2003); Ivey v. Commissioner of Correction, 88 Mass. App. Ct. 18, 25-26 (2015). However, here, neither termination from employment nor termination from the garden program are sanctions that can be applied to an inmate under the disciplinary process.[8] As a result, neither of these

---

outside of the disciplinary process as needed to maintain security.

[8] The dissent asserts that the term sanction is not defined in the regulations. However, its meaning is obvious within the context of 103 Code Mass. Regs. § 430.25, which specifically states in each subsection that "Sanctions for each Category [1, 2, 3, or 4] offense are as follows" (emphasis added). After listing the possible sanctions for each category and within the same subsection concerning that category of offenses, § 430.25 specifies that "[n]o more than one sanction shall be imposed per offense." It is a reasonable inference from the plain language of the regulation that a sanction includes only those that are listed and available to be used as part of the disciplinary proceeding. See Ten Local Citizen Group v. New England Wind, LLC, 457 Mass. 222, 228 (2010) ("We ordinarily accord an agency's interpretation of its own regulation considerable deference" [quotation and citation omitted]); Ivey v. Commissioner of Correction, 88 Mass. App. Ct. at 24 ("Under the regulations, sanctions for each category of offense 'are as follows' [emphasis supplied]. 103 Code Mass. Regs. § 430.25 [2006]").

actions is an additional sanction under the regulations.[9] Furthermore, it is clear from the Deputy Superintendent's affidavit that the goal in terminating the plaintiff from the garden program was not punishment for the offenses to which he pleaded guilty, but maintaining a secure and safe environment within the institution.

Accordingly, the portion of the judgment allowing summary judgment for the plaintiff on count IV is reversed, and judgment is to enter allowing summary judgment for the defendants on that count. In all other respects, the judgment is affirmed.

<u>So ordered</u>.

---

[9] The judge properly concluded that loss of prison employment or participation in the garden program do not implicate a liberty or property interest.

AGNES, J. (dissenting).  This case may seem to be much ado about nothing in that it involves a prisoner at the North Central Correctional Institution (NCCI) who was terminated from a garden program after he was found guilty of three disciplinary infractions in the two-month period between April and May, 2011.[1]  The issue is not whether the plaintiff is a suitable candidate for the garden program or any other privilege.  Instead, my disagreement with the majority is over an important question of first impression:  namely, whether prison officials have the authority to take disciplinary or administrative action against inmates outside the framework of the regulations adopted by the Commissioner of Correction (Commissioner).  See G. L. c. 124,

---

[1] According to the affidavit of the Deputy Superintendent for Programs and Treatment (Deputy Superintendent) of NCCI, which was submitted by the defendants, the garden program is one of the "leisure" programs made available to inmates at NCCI. She described it as follows:  the garden program "is operated in a large, fenced off area of the prison.  Inmates who are selected for the program, have access to a variety of gardening tools. Large rocks separate the garden plots."  In 2011, the garden program operated from April 15 until October 15.  There are written rules governing inmate participation in the garden program.  The plaintiff signed an agreement before he participated in the garden program in which he acknowledges that he received a copy of the program's rules.  Rule 26 of the garden program rules (rule 26) states that any participating inmate who is found guilty of a disciplinary infraction "will be terminated from the garden program," and further provides that prison officials have the discretion to remove an inmate from the garden program at any time.  As I read the record, including, in particular, the affidavit by the Deputy Superintendent, the defendants do not rely on rule 26 as authority for the decision to terminate the plaintiff from the program because that rule, which requires automatic termination for any disciplinary violation, was not followed in this case.

§ 1(b), as amended by St. 1996, c. 51, § 283;[2] G. L. c. 127, § 33, as amended by St. 1979, c. 485, § 22.[3]  In particular, as we recently noted in Ivey v. Commissioner of Correction, 88 Mass. App. Ct. 18, 25-26 (2015), in imposing discipline against an inmate, the Department of Correction is bound to follow the regulatory framework established by the Commissioner.  See 103 Code Mass. Regs. §§ 430.00 (2006).  The defendants concede there is no published decision that supports their view that their authority to discipline inmates extends beyond what is contained in the regulations adopted by the Commissioner.  The majority opinion does not cite any appellate decision that endorses such a view.  For the reasons that follow, I do not believe the authority asserted by the defendants and confirmed by the

---

[2] General Laws c. 124, § 1(b), provides that the Commissioner has a duty to "maintain security, safety and order at all state correctional facilities, utilize the resources of the department to prevent escapes from any such facility, take all necessary precautions to prevent the occurrence or spread of any disorder, riot or insurrection at any such facility, including but not limited to the development, planning, and coordination of emergency riot procedures with the colonel of state police, and take suitable measures for the restoration of order."

[3] General Laws c. 127, § 33, reads as follows:  "The superintendents of all institutions under the jurisdiction of the department of correction and the superintendents and keepers of jails and houses of correction shall cause all necessary means to be used to maintain order in the institutions under their supervision, enforce obedience, suppress insurrection and prevent escapes, and for that purpose they may at all times require the aid and utmost exertions of all the officers of the institution except the chaplain and the physician."

majority exists.  As the Supreme Judicial Court observed in

Royce v. Commissioner of Correction, 390 Mass. 425, 427 (1983),

"courts permit prison administrators considerable discretion in

the adoption and implementation of prison policies.  However,

the limits of such discretion are established by the rules and

regulations promulgated by the Department of Correction.  Once

an agency has seen fit to promulgate regulations, it must comply

with those regulations" (citations omitted).  I believe the

defendants violated this precept.  Accordingly, I respectfully

dissent.

1.  The regulatory framework for disciplining State

prisoners.  Conduct violations by State prison inmates like the

plaintiff are governed by regulations adopted by the

Commissioner.  See 103 Code Mass. Regs. §§ 430.00.  See

generally Ivey v. Commissioner of Correction, supra at 21-22.

These regulations "establish a fair and impartial system

governing disciplinary proceedings involving inmates of state

correctional institutions."  103 Code Mass. Regs. § 430.01

(2006).  The offenses for which sanctions may be imposed are

divided into four categories, and are set forth in a Code of

Offenses adopted by the Commissioner.[4]  103 Code Mass. Regs.

---

[4] The Code of Offenses is comprehensive in scope.  Category 1 offenses are the most serious and include homicide, aggravated assault, sexual assault, and rioting.  Category 2 offenses include assaults, fighting, and offenses relating to the use of

§ 430.24 (2006). The Commissioner has also specified the sanctions that may be imposed whenever an inmate is found guilty of an offense in any of the four categories. See 103 Code Mass. Regs. § 430.25 (2006) (listing sanctions that may be imposed against inmate found guilty of category 1 through 4 offense). Finally, the regulations state that "[n]o more than one sanction shall be imposed per offense." 103 Code Mass. Regs. § 430.25(1), (2), (3), and (4). The term sanction is not defined.

In this case, a judge of the Superior Court ruled, on cross motions for summary judgment, that the defendants violated 103 Code Mass. Regs. § 430.25 because after they had sanctioned the plaintiff with "disciplinary detention" for the category 3 offense he committed on May 13, 2011, they imposed a second sanction in the form of termination from the garden program. Under 103 Code Mass. Regs. § 430.25(3), the sanctions that may be imposed for a category 3 violation are as follows:

> "(a) Disciplinary Detention for up to ten days;
> "(b) Up to 60 days loss of a privilege, including but not limited to one of the following: television, radio, canteen, either visits or phone privileges, hot pots, and leisure programs;

banned substances. Category 3 offenses include lying or providing false information to a staff person, gambling, being out of place or in an unauthorized area, and disruptive conduct. Category 4 offenses include possession of contraband, "violating any departmental rule or regulation, or any other rule, regulation, or condition of an institution or community based program." 130 Code Mass. Regs. § 430.24 (2006).

"(c) Cell or housing restriction for up to ten days;
"(d) Restitution, including, if applicable, any medical treatment assessment under M.G.L. c. 124, § 1(s);
"(e) Prohibition from replacing any altered appliance for up to four months;
"(f) Up to 15 hours of extra duty."

The parties agree that the garden program is one of a number of activities that are within the definition of "leisure programs" as that phrase appears in 103 Code Mass. Regs. § 430.25(3).

The defendants argue that terminating the plaintiff from the garden program after he was found guilty of a disciplinary offense for the third time in two months was not a sanction. In effect, the defendants argue that a punishment is not a sanction so long as it is not one of those sanctions specifically listed in 103 Code Mass. Regs. § 430.25. Under this reasoning, prison officials would be free to punish an inmate found guilty of a category 3 offense by imposing a sanction consisting of a sixty-day suspension from the garden program, and then, on the basis of that guilty finding (or other guilty findings), impose an additional suspension from the garden program for more than sixty days because suspensions for more than sixty days are not specifically listed as sanctions. I agree with the judge, who rejected this reasoning.

2. <u>Waiver</u>. The defendants argue that the plaintiff waived any claim he might otherwise have had over his termination from the garden program because he signed an agreement when he

entered the program that creates an independent basis for his termination. The agreement in question states that the plaintiff has received a copy of the garden program rules, which included rule 26.[5]

According to the affidavit of the Deputy Superintendent (see note 1, supra), the plaintiff was informed that he was terminated from the garden program after he was found guilty of his third disciplinary infraction in two months on May 16, 2011. The plaintiff was not terminated from the garden program because rule 26 required termination. Rather, in her affidavit, the Deputy Superintendent states that it was necessary to terminate the plaintiff from the program because "[t]hrough his misconduct, he exhibited an inability or unwillingness to follow institutional rules." Under these circumstances, it cannot be said that the plaintiff knowingly and voluntarily waived any rights he had under the regulations in question by signing the agreement containing rule 26.

3. Statutory authority to maintain security, safety, and order. The majority's conclusion that the term sanction as it

_____

[5] Rule 26 of the garden program rules, in its entirety, reads as follows: "Inmates will be terminated from the garden program upon a guilty finding for any disciplinary report and/or any violation of garden rules. Participation in the garden program is a privilege and the Administration may use its discretion to remove any inmate from the program at any time whether or not a disciplinary report is issued. Inmates terminated from the program forfeit their slot and may apply for readmission via the lottery system for the next season."

appears in 103 Code Mass. Regs. § 430.25 does not include termination from a leisure program such as the garden program, is not based on any regulatory definition of the term sanction, for there is none.  See 103 Code Mass. Regs. § 430.06 (2006) (Definitions).  In addition, the majority's conclusion is not based on the fact that termination from a program is contrary to the common definition of the word sanction, for it is not.[6] Instead, the majority reasons that unless prison officials have discretion to take adverse actions against inmates beyond their authority under the department's regulations, prison officials will be unable "to maintain security, safety and order" within their institutions.  See ante at __, quoting from G. L. c. 124, § 1(b).  See also G. L. c. 127, § 33 (duty of superintendents of penal institutions to "maintain order," and "enforce obedience").

I agree with the majority that the plaintiff has no liberty or property interest in his participation in the garden program. Ante at __ note 9.  However, in my view, there is no basis for the defendants' assertion and the majority's conclusion that prison officials have discretionary authority to maintain security, safety, and order within their institutions beyond that which is given to them under the regulatory framework

---

[6] The word sanction is defined as "[a] penalty or coercive measure that results from failure to comply with a law, rule, or order."  Black's Law Dictionary 1458 (9th ed. 2009).

established by the Commissioner.  In adopting 103 Code Mass.
Regs. § 430.00, and other regulations, the Commissioner
specifically relied on the statutory authority cited by the
defendants and the majority as the basis for recognizing that
prison officials have extra-regulatory discretion.[7]  Neither the
Supreme Judicial Court nor this court has previously recognized
the existence of any such unregulated, discretionary authority.
None of the decisions cited by the majority stand for the
proposition that prison officials have discretion beyond the
framework of the regulations adopted by the commissioner to
discipline inmates.

The majority opinion overlooks the breadth and scope of the
regulatory authority currently enjoyed by prison officials to
enable them to maintain security, safety, and order within their
institutions.  First, any time an inmate is alleged to have
committed one of the offenses in categories 1 through 4, such as
the infraction committed by the plaintiff on May 13, 2011, the
regulations give prison officials the authority to immediately
remove the inmate from the general population and place the
inmate in the special management unit, where the inmate will be
held in administrative segregation pending a disciplinary

---

[7] 103 Code Mass. Regs. § 430.02 (2006) (Statutory
Authorization) states that the regulations regarding discipline
are issued pursuant to G. L. c. 124, § 1(b), (i) and (q), and G.
L. c. 127, § 33.

hearing. See 103 Code Mass. Regs. § 423.08(1)(a) (2007) (permitting inmate's placement in administrative segregation when inmate "is awaiting a hearing for a violation of institution rules or regulations"). In fact, this is precisely what prison officials did to the plaintiff in this case. Once this occurs, the inmate is not in the general population and no longer has privileges such as access to the garden. Second, the defendants could have initiated a reclassification procedure that could have resulted in the plaintiff's ineligibility to participate in the garden program. See 103 Code Mass. Regs. § 420.09 (2006). Third, apart from the disciplinary process, if any inmate is a "substantial threat" to others, to property, or to "the operation of a state correctional facility," prison officials may act immediately to place the inmate in "awaiting action in restrictive confinement," in a "Departmental Segregation Unit," or transfer the inmate to another institution. See 103 Code Mass. Regs. §§ 421.06, 421.07, 421.08, and 421.09 (1994). See also 103 Code Mass. Regs. § 421.24 (1994) (Commissioner may temporarily suspend all or part of 103 Code Mass. Regs. § 421.00). And fourth, the Commissioner has broad authority to transfer "any prisoner sentenced to state prison" to other institutions within or outside of Massachusetts. G. L. c. 127, § 97A, inserted by St. 1968, c. 624. See Sisbarro v. Warden, Massachusetts State

Penitentiary, 592 F.2d 1, 4 (1st Cir.), cert. denied, 444 U.S. 489 (1979) (§ 97A "places no restrictions on the making of that determination by the commissioner"); Harris v. Commissioner of Correction, 409 Mass. 472, 478 (1991) ("Neither this statute [§ 97A] nor any other provision of State law guarantees that prisoners will not be transferred unless they misbehave").

Conclusion. The plaintiff has not been a model inmate. Nevertheless, he is no less entitled to the benefits of the regulations adopted by the Commissioner, in particular the rule against the imposition of more than one sanction for a single offense, see 103 Code Mass. Regs. § 430.25(3), than any other inmate. See Drayton v. Commissioner of Correction, 52 Mass. App. Ct. 135, 140 (2001). If prison officials believe that a maximum loss of sixty days in a leisure program such as the garden program is not sufficient punishment for an inmate found guilty of a category 3 offense or that an inmate found guilty of multiple offenses within a specific period of time should receive additional punishment, the Commissioner has the authority to amend the regulations.