Agnes, J.
(dissenting). This case may seem to be much ado about nothing in that it involves a prisoner at the North Central Correctional Institution (NCCI) who was terminated from a garden program after he was found guilty of three disciplinary infractions in the two-month period between April and May, 2011.[1] The issue is not whether the plaintiff is a suitable candidate for the garden program or any other privilege. Instead, my disagreement with the majority is over an important question of first impression: namely, whether prison officials have the authority to take disciplinary or administrative action against inmates outside the framework of the regulations adopted by the Commissioner of Correction (Commissioner). See G. L. c. 124, § 1(b), as amended by St. 1996, c. 51, § 283;[2] G. L. c. 127, § 33, as amended by St. *514 1979, c. 485, § 22.[3] In particular, as we recently noted in Ivey v. Commissioner of Correction, 88 Mass. App. Ct. 18, 25-26 (2015), in imposing discipline against an inmate, the Department of Correction is bound to follow the regulatory framework established by the Commissioner. See 103 Code Mass. Regs. §§ 430.00 (2006). The defendants concede there is no published decision that supports their view that their authority to discipline inmates extends beyond what is contained in the regulations adopted by the Commissioner. The majority opinion does not cite any appellate decision that endorses such a view. For the reasons that follow, I do not believe the authority asserted by the defendants and confirmed by the majority exists. As the Supreme Judicial Court observed in Royce v. Commissioner of Correction, 390 Mass. 425, 427 (1983), “courts permit prison administrators considerable discretion in the adoption and implementation of prison policies. However, the limits of such discretion are established by the rules and regulations promulgated by the Department of Correction. Once an agency has seen fit to promulgate regulations, it must comply with those regulations” (citations omitted). I believe the defendants violated this precept. Accordingly, I respectfully dissent.
1. The regulatory framework for disciplining State prisoners. Conduct violations by State prison inmates like the plaintiff are governed by regulations adopted by the Commissioner. See 103 Code Mass. Regs. §§ 430.00. See generally Ivey v. Commissioner of Correction, supra at 21-22. These regulations “establish a fair and impartial system governing disciplinary proceedings involving inmates of state correctional institutions.” 103 Code Mass. Regs. § 430.01 (2006). The offenses for which sanctions may be imposed are divided into four categories, and are set forth in a Code of Offenses adopted by the Commissioner.[4] 103 Code Mass. *515 Regs. § 430.24 (2006). The Commissioner has also specified the sanctions that may be imposed whenever an inmate is found guilty of an offense in any of the four categories. See 103 Code Mass. Regs. § 430.25 (2006) (listing sanctions that may be imposed against inmate found guilty of category 1 through 4 offense). Finally, the regulations state that “[n]o more than one sanction shall be imposed per offense.” 103 Code Mass. Regs. § 430.25(1), (2), (3), and (4). The term sanction is not defined.
In this case, a judge of the Superior Court ruled, on cross motions for summary judgment, that the defendants violated 103 Code Mass. Regs. § 430.25 because after they had sanctioned the plaintiff with “disciplinary detention” for the category 3 offense he committed on May 13, 2011, they imposed a second sanction in the form of termination from the garden program. Under 103 Code Mass. Regs. § 430.25(3), the sanctions that may be imposed for a category 3 violation are as follows:
“(a) Disciplinary Detention for up to ten days;
“(b) Up to 60 days loss of a privilege, including but not limited to one of the following: television, radio, canteen, either visits or phone privileges, hot pots, and leisure programs;
“(c) Cell or housing restriction for up to ten days;
“(d) Restitution, including, if applicable, any medical treatment assessment under M.G.L. c. 124, § l(s);
“(e) Prohibition from replacing any altered appliance for up to four months;
“(f) Up to 15 hours of extra duty.”
The parties agree that the garden program is one of a number of activities that are within the definition of “leisure programs” as that phrase appears in 103 Code Mass. Regs. § 430.25(3).
The defendants argue that terminating the plaintiff from the garden program after he was found guilty of a disciplinary offense *516 for the third time in two months was not a sanction. In effect, the defendants argue that a punishment is not a sanction so long as it is not one of those sanctions specifically listed in 103 Code Mass. Regs. § 430.25. Under this reasoning, prison officials would be free to punish an inmate found guilty of a category 3 offense by imposing a sanction consisting of a sixty-day suspension from the garden program, and then, on the basis of that guilty finding (or other guilty findings), impose an additional suspension from the garden program for more than sixty days because suspensions for more than sixty days are not specifically listed as sanctions. I agree with the judge, who rejected this reasoning.
2. Waiver. The defendants argue that the plaintiff waived any claim he might otherwise have had over his termination from the garden program because he signed an agreement when he entered the program that creates an independent basis for his termination. The agreement in question states that the plaintiff has received a copy of the garden program rules, which included rule 26.[5]
According to the affidavit of the Deputy Superintendent (see note 1, supra), the plaintiff was informed that he was terminated from the garden program after he was found guilty of his third disciplinary infraction in two months on May 16, 2011. The plaintiff was not terminated from the garden program because rule 26 required termination. Rather, in her affidavit, the Deputy Superintendent states that it was necessary to terminate the plaintiff from the program because “[t]hrough his misconduct, he exhibited an inability or unwillingness to follow institutional rules.” Under these circumstances, it cannot be said that the plaintiff knowingly and voluntarily waived any rights he had under the regulations in question by signing the agreement containing rule 26.
3. Statutory authority to maintain security, safety, and order. The majority’s conclusion that the term sanction as it appears in 103 Code Mass. Regs. § 430.25 does not include termination from a leisure program such as the garden program is not based on any regulatory definition of the term sanction, for there is *517 none. See 103 Code Mass. Regs. § 430.06 (2006) (Definitions). In addition, the majority’s conclusion is not based on the fact that termination from a program is contrary to the common definition of the word sanction, for it is not.[6] Instead, the majority reasons that unless prison officials have discretion to take adverse actions against inmates beyond their authority under the department’s regulations, prison officials will be unable to “maintain security, safety and order” within their institutions. See ante at 509, quoting from G. L. c. 124, § 1(h). See also G. L. c. 127, § 33 (duty of superintendents of penal institutions to “maintain order,” and “enforce obedience”).
I agree with the majority that the plaintiff has no liberty or property interest in his participation in the garden program. Ante at note 9. However, in my view, there is no basis for the defendants’ assertion and the majority’s conclusion that prison officials have discretionary authority to maintain security, safety, and order within their institutions beyond that which is given to them under the regulatory framework established by the Commissioner. In adopting 103 Code Mass. Regs. § 430.00, and other regulations, the Commissioner specifically relied on the statutory authority cited by the defendants and the majority as the basis for recognizing that prison officials have extra-regulatory discretion.[7] Neither the Supreme Judicial Court nor this court has previously recognized the existence of any such unregulated, discretionary authority. None of the decisions cited by the majority stands for the proposition that prison officials have discretion beyond the framework of the regulations adopted by the Commissioner to discipline inmates.
The majority opinion overlooks the breadth and scope of the regulatory authority currently enjoyed by prison officials to enable them to maintain security, safety, and order within their institutions. First, any time an inmate is alleged to have committed one of the offenses in categories 1 through 4, such as the infraction committed by the plaintiff on May 13, 2011, the regulations give prison officials the authority to immediately remove the inmate from the general population and place the inmate in *518 the special management unit, where the inmate will be held in administrative segregation pending a disciplinary hearing. See 103 Code Mass. Regs. § 423.08(1)(a) (2007) (permitting inmate’s placement in administrative segregation when inmate “is awaiting a hearing for a violation of institution rules or regulations”). In fact, this is precisely what prison officials did to the plaintiff in this case. Once this occurs, the inmate is not in the general population and no longer has privileges such as access to the garden. Second, the defendants could have initiated a reclassification procedure that could have resulted in the plaintiff’s ineligibility to participate in the garden program. See 103 Code Mass. Regs. § 420.09 (2006). Third, apart from the disciplinary process, if any inmate is a “substantial threat” to others, to property, or to “the operation of a state correctional facility,” prison officials may act immediately to place the inmate in “awaiting action in restrictive confinement,” in a “Departmental Segregation Unit,” or transfer the inmate to another institution. See 103 Code Mass. Regs. §§ 421.06, 421.07, 421.08, and 421.09 (1994). See also 103 Code Mass. Regs. § 421.24 (1994) (Commissioner may temporarily suspend all or part of 103 Code Mass. Regs. § 421.00). And fourth, the Commissioner has broad authority to transfer “any prisoner sentenced to state prison” to other institutions within or outside of Massachusetts. G. L. c. 127, § 97A, inserted by St. 1968, c. 624. See Sisbarro v. Warden, Massachusetts State Penitentiary, 592 F.2d 1, 4 (1st Cir.), cert. denied, 444 U.S. 489 (1979) (§ 97A “places no restrictions on the making of that determination by the commissioner”); Harris v. Commissioner of Correction, 409 Mass. 472, 478 (1991) (“Neither this statute [§ 97A] nor any other provision of State law guarantees that prisoners will not be transferred unless they misbehave”).
4. Conclusion. The plaintiff has not been a model inmate. Nevertheless, he is no less entitled to the benefits of the regulations adopted by the Commissioner, in particular the rule against the imposition of more than one sanction for a single offense, see 103 Code Mass. Regs. § 430.25(3), than any other inmate. See Drayton v. Commissioner of Correction, 52 Mass. App. Ct. 135, 140 (2001). If prison officials believe that a maximum loss of sixty days in a leisure program such as the garden program is not sufficient punishment for an inmate found guilty of a category 3 offense or that an inmate found guilty of multiple offenses within a specific period of time should receive additional punishment, the Commissioner has the authority to amend the regulations.

 According to the affidavit of the Deputy Superintendent for Programs and Treatment (Deputy Superintendent) of NCCI, which was submitted by the defendants, the garden program is one of the “leisure” programs made available to inmates at NCCI. She described it as follows: the garden program “is operated in a large, fenced off area of the prison. Inmates who are selected for the program, have access to a variety of gardening tools. Large rocks separate the garden plots.” In 2011, the garden program operated from April 15 until October 15. There are written rules governing inmate participation in the garden program. The plaintiff signed an agreement before he participated in the garden program in which he acknowledges that he received a copy of the program’s rules. Rule 26 of the garden program rules (rule 26) states that any participating inmate who is found guilty of a disciplinary infraction “will be terminated from the garden program,” and further provides that prison officials have the discretion to remove an inmate from the garden program at any time. As I read the record, including, in particular, the affidavit by the Deputy Superintendent, the defendants do not rely on rule 26 as authority for the decision to terminate the plaintiff from the program because that rule, which requires automatic termination for any disciplinary violation, was not followed in this case.

 General Laws c. 124, § 1(b), provides that the Commissioner has a duty to “maintain security, safety and order at all state correctional facilities, utilize the resources of the department to prevent escapes from any such facility, take all necessary precautions to prevent the occurrence or spread of any disorder, riot *514 or insurrection at any such facility, including but not limited to the development, planning, and coordination of emergency riot procedures with the colonel of state police, and take suitable measures for the restoration of order.”

 General Laws c. 127, § 33, reads as follows: “The superintendents of all institutions under the jurisdiction of the department of correction and the superintendents and keepers of jails and houses of correction shall cause all necessary means to be used to maintain order in the institutions under their supervision, enforce obedience, suppress insurrection and prevent escapes, and for that purpose they may at all times require the aid and utmost exertions of all the officers of the institution except the chaplain and the physician.”

 The Code of Offenses is comprehensive in scope. Category 1 offenses are the most serious and include homicide, aggravated assault, sexual assault, and *515 rioting. Category 2 offenses include assaults, fighting, and offenses relating to the use of banned substances. Category 3 offenses include lying or providing false information to a staff person, gambling, being out of place or in an unauthorized area, and disruptive conduct. Category 4 offenses include possession of contraband, and “violating any departmental rule or regulation, or any other rule, regulation, or condition of an institution or community based program.” 130 Code Mass. Regs. § 430.24 (2006).

 Rule 26 of the garden program rules, in its entirety, reads as follows: “Inmates will be terminated from the garden program upon a guilty finding for any disciplinary report and/or any violation of garden rules. Participation in the garden program is a privilege and the Administration may use its discretion to remove any inmate from the program at any time whether or not a disciplinary report is issued. Inmates terminated from the program forfeit their slot and may apply for readmission via the lottery system for the next season.”

 The word sanction is defined as “[a] penalty or coercive measure that results from failure to comply with a law, rule, or order.” Black’s Law Dictionary 1458 (9th ed. 2009).

 103 Code Mass. Regs. § 430.02 (2006) (Statutory Authorization) states that the regulations regarding discipline are issued pursuant to G. L. c. 124, § 1(b), (0, and (q), and G. L. c. 127, § 33.