## Commonwealth *vs.* Nicole Ferola.

No. 07-P-805.

Middlesex. May 5, 2008. - July 2, 2008.

Present: Grasso, Trainor, & Wolohojian, JJ.

*Motor Vehicle,* Operating under the influence. *Narcotic Drugs.*

At the trial of a criminal complaint charging the defendant with operating a motor vehicle while under the influence of narcotic drugs, in violation of G. L. c. 90, § 24(1)(*a*)(1), the Commonwealth did not meet its burden of demonstrating that the central nervous system depressants that the defendant admitted she had taken, and that impaired her capacity to operate her vehicle, were narcotic drugs, depressants, or stimulant substances as defined in G. L. c. 94C, § 1. [172-174]

Complaint received and sworn to in the Concord Division of the District Court Department on May 11, 2006.

The case was tried before *Robert J. McKenna,* J.

*Cathryn A. Neaves* for the defendant.

*Melissa Weisgold Johnsen,* Assistant District Attorney, for the Commonwealth.

Grasso, J. A jury found the defendant, Nicole Ferola, guilty of operating a motor vehicle while under the influence of narcotic drugs, in violation of G. L. c. 90, § 24(1)(*a*)(1). On appeal, the defendant asserts that the Commonwealth presented insufficient evidence to sustain her conviction under the statute. We agree, and we reverse the conviction.[1]

The crime, which is legislatively created, does not criminalize operation under the influence of all narcotics, stimulants, or depressants, but only those "defined in section one of chapter ninety-four C." G. L. c. 90, § 24(1)(*a*)(1). Absent proof that the defendant's operation was impaired by a drug, depressant, or stimulant that is among those so defined, no statutory violation arises.

---

[1]Because the evidence was insufficient, we need not address the defendant's other appellate contention that the judge erred in permitting introduction of certain of the defendant's medical records.

1. *Facts.* Viewed in the light most favorable to the Common-wealth, see *Commonwealth* v. *Latimore*, 378 Mass. 671, 677-678 (1979), the jury could have found the following. At 3:20 A.M. on April 24, 2006, Bedford police Officer Michael Sullivan re-ceived a dispatch regarding a vehicle on the Middlesex Turnpike. Sullivan proceeded to the described location and found a vehicle stopped in the middle of the southbound travel lane. He ap-proached and observed an individual, later identified as the de-fendant, apparently asleep and sitting in the driver's seat, but slumped over onto the passenger side. The keys were in the igni-tion and the engine was running.

When Sullivan first tried to rouse the defendant, she sat up, looked at him, and told him to "put the bag back on the kitchen table." She then slumped back onto the passenger seat. Sullivan roused her a second time. She sat up and opened her eyes slightly. Sullivan noticed that her eyes appeared to be pinpointed. Suspect-ing drug involvement, Sullivan asked the defendant whether she was taking any medications. She responded by mumbling the names of a number of substances, including Klonopin.

Sullivan requested an ambulance. Prior to the defendant be-ing transported to the Lahey Clinic in Burlington, Sullivan engaged her further in conversation. He asked her what time it was. She responded that it was 8:00 A.M. on Sunday morning. In fact, it was about 3:40 A.M. on Monday. Sullivan asked the defendant where she thought she was, and she replied that she was at "Kenmar," i.e., her apartment building in Billerica.

Sullivan followed the ambulance to the hospital where he spoke with the defendant again. He asked her where she had been heading, and she responded that she probably had been go-ing to her mother's house, but that she pulled over to the side of the road because she was tired. Throughout his interaction with the defendant, Sullivan did not detect any odor of alcohol.

As set forth in the defendant's medical records, she informed treating physicians at the hospital that she had taken Klonopin and amitriptyline.[2] She told the physicians as well that she had consumed all of her sleeping medications at 9:00 P.M. She had driven friends home after a disagreement and pulled over when

---

[2] The trial judge excluded reference to Cymbalta and Vistaril, two other drugs noted in the defendant's medical records.

she felt sleepy. She was unsure how long she had been sleeping.

The defendant's medical records also noted her lethargy, inability to keep her eyes open, and slurred speech. A blood test conducted at 4:00 A.M. was "borderline" regarding the presence of benzodiazepines, of which Klonopin is one. The blood test also noted the presence of "300 ng/ml nortriptyline, or one or more other tricyclics." Amitriptyline is a tricyclic.

Based on his training, experience, and certification, Sullivan was qualified as a drug recognition expert able to evaluate the presence and classification of particular drugs, including narcotics and central nervous system (CNS) depressants or stimulants, and their effects on a driver. Sullivan opined that the appearance of the defendant's eyes, and her extreme lethargy, incoherent speech, and disorientation as to time and place, together with the absence of any odor of alcohol, suggested that she was under the influence of drugs. He related that Klonopin is a CNS depressant with highly sedative effects that slows down the central nervous system and heart rate, causing fatigue and requiring caution when driving. He related that amitriptyline is also such a CNS depressant. If taken in combination with each other, such substances have an even more powerful effect.

2. *Discussion.* General Laws c. 90, § 24(1)(*a*)(1), as appearing in St. 1994, c. 25, § 3, provides in pertinent part that whoever operates a motor vehicle on a public way "while under the influence of . . . narcotic drugs, depressants or stimulant substances, all as defined in section one of chapter ninety-four C, . . . shall be punished . . . ." The Commonwealth does not contend that its proof encompassed any of the narcotic drugs (such as opiates or cocaine) defined in G. L. c. 94C, § 1. Rather, the Commonwealth's case depends entirely on whether it proved that the defendant was operating under the influence of a depressant or stimulant substance as defined in that section.[3]

The Commonwealth offered no evidence that the defendant

---

[3]General Laws c. 94C, § 1, inserted by St. 1971, c. 1071, § 1, defines "depressant or stimulant substance" as:

"(*a*) a drug which contains any quantity of barbituric acid or any of the salts of barbituric acid; or any derivative of barbituric acid which the United States Secretary of Health, Education, and Welfare has by regulation designated as habit forming; or

was operating under the influence of barbiturates, amphetamines, or LSD, the first three depressant or stimulant substances defined in § 1. We turn, accordingly, to whether the Commonwealth presented sufficient evidence to establish that the defendant was under the influence of the fourth type of defined depressant or stimulant substance, namely, "any drug except marihuana which contains any quantity of a substance which the United States Attorney General has by regulation designated as having a potential for abuse because of its depressant or stimulant effect on the central nervous system or its hallucinogenic effect." G. L. c. 94C, § 1, inserted by St. 1971, c. 1071, § 1.

The evidence was ample that the defendant was operating a motor vehicle on a public way while under the influence of the CNS depressants Klonopin and amitriptyline. Likewise, the evidence was sufficient to establish that the defendant's capacity to operate her vehicle was impaired by these substances. See *Commonwealth* v. *Johnson*, 59 Mass. App. Ct. 164, 171-172 (2003). Given the statutory requirements, however, it was simply not enough to establish that the defendant was operating her vehicle under the influence of a depressant substance without also establishing that the substance in question is a drug that "contains any quantity of a substance which the United States Attorney General has by regulation designated as having a potential for abuse because of its depressant . . . effect on the central nervous system or its hallucinogenic effect." G. L. c. 94C, § 1. Even viewed most favorably to the Commonwealth, nothing in the evidence established directly, or by inference, that Klonopin or amitriptyline are such substances.

We reject the Commonwealth's contention that it was sufficient to establish that the defendant was under the influence of depressants without establishing that the depressants in question are drugs containing any substance designated by the United

"(*b*) a drug which contains any quantity of amphetamine or any of its optical isomers; . . . or

"(*c*) [LSD]; or

"(*d*) any drug except marihuana which contains any quantity of a substance which the United States Attorney General has by regulation designated as having a potential for abuse because of its depressant or stimulant effect on the central nervous system or its hallucinogenic effect."

States Attorney General as having a potential for abuse. The Commonwealth's proffered interpretation would read out of the statute the words "as defined in section one of chapter ninety-four C" as detailed in G. L. c. 90, § 24(1)(*a*)(1). See *Commonwealth* v. *Green*, 408 Mass. 48, 50 (1990) (evidence must demonstrate that defendant is under influence of drug defined in G. L. c. 94C, § 1).

Even if Klonopin were a substance so designated in the United States Attorney General's regulations, see 21 C.F.R. § 1308.14 (2006), no such proof was adduced at trial. The Commonwealth neither introduced expert testimony to that effect, offered the regulations in evidence, nor asked the judge to take judicial notice of the regulations so that he might submit them to the jury for determination.[4] See *Commonwealth* v. *Green*, 408 Mass. at 50-51 & nn.2, 3. See also *Commonwealth* v. *Finegan*, 45 Mass. App. Ct. 921, 923 (1998) (judge constrained to submit to jury factual matters of which he takes judicial notice). Compare *Commonwealth* v. *Reynolds*, 67 Mass. App. Ct. 215, 216 (2006) (defendant under influence of three prescription medications "that met the statutory definition of narcotics or depressants"). Furthermore, "[i]t is inappropriate to supply an essential element of proof by taking judicial notice of a fact at the appellate level." *Commonwealth* v. *Green*, *supra* at 50.

Proof of violation of the statutory prohibition against operating a motor vehicle while under the influence of drugs requires more than proof that an individual is operating a motor vehicle while under the influence of a narcotic or a CNS depressant or stimulant substance. Also required is proof that the narcotic, depressant, or stimulant substance is one defined in G. L. c. 94C, § 1.

3. *Conclusion.* The defendant's motion for a required finding of not guilty should have been allowed. The judgment is reversed. The verdict is set aside. Judgment shall enter for the defendant.

*So ordered.*

---

[4]The Commonwealth may provide the required proof in the form of expert testimony, introduction of the pertinent regulations in evidence, or by judicial notice (subject to jury evaluation). See *Commonwealth* v. *Green*, 408 Mass. at 50-51 & n.2.